AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Idaho

| | |
|---|---|
| United States of America<br>v.<br>David Orebaugh<br><br>*Defendant(s)* | Case No.<br>1:20-mj-00325-CWD |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 19, 2020__ in the county of __Canyon__ in the _____ District of __Idaho__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:
See attached affidavit of Task Force Officer Joel Garcia

☑ Continued on the attached sheet.

*Complainant's signature*

TFO Joel Garcia
*Printed name and title*

Per Rule 4.1, Contents attested to --
Sworn by telephone. and subscribed electronically.

Date: 11/20/2020

*Judge's signature*

City and state: Boise, Idaho

Candy W. Dale, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Joel Garcia, being first duly sworn on oath, deposes and says: I am a Task Force Officer with the United States Drug Enforcement Administration (DEA), and have been so employed since June of 2017. I am currently assigned to the Seattle Field Division, Boise District Office. As a Task Force Officer, I am responsible for the enforcement of the laws pertaining to Title 21 of Controlled Substance Act.

2. I have received specialized training in the enforcement and investigation of Title 21 and the Controlled Substance Act. I have received classroom training, including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances.

3. I am also a Detective for the Nampa Police Department where I am assigned to the Special Investigations unit. I have been assigned as a Detective with the Special Investigations Unit since June of 2011, where I have participated in large scale, international, complex conspiracy investigations involving narcotics and dangerous drugs. I have written and participated in numerous search and seizure warrants for narcotics and dangerous drugs, and the records, books and proceeds derived as a result of this illicit activity.

4. The subsequent information contained in this affidavit is based upon my personal participation in this investigation, including examination of reports, as well as information related to me by other federal agents and local police officers participating in this investigation.

- a.) In October 2020, Nampa Police Special Investigations Unit and Boise DEA began a drug investigation on David Orebaugh (06-25-74) with phone number (530) 448-0186. Detective Woodward verified Orebaugh as the subscriber of the phone number through a law enforcement database.

- b.) On November 7, 2020, A Nampa Police Confidential Informant, hereafter referred to as Nampa CI, informed Detective Woodward that Orebaugh had changed his phone number to (619) 642-6780.

1

c.) On November 13, 2020, The Nampa CI, under the direction and control of Detective Woodward, introduced Detective Woodward, while working in an undercover capacity, to Orebaugh via a three-way phone call. During the phone call Orebaugh identified himself to Detective Woodward as "Dave" Detective Woodward arranged, via phone call and text messages, to purchase 13 pounds of methamphetamine from Orebaugh. Orebaugh agreed to accept $60,000 as payment for the methamphetamine. Orebaugh also mentioned he was going to send one pound of methamphetamine for Nampa CI.

d.) On November 14, 2020, Orebaugh confirmed with Detective Woodward that he was going to send a total of 14 pounds of methamphetamine.

e.) Detective Woodward through communication, via phone call and text messages, with Orebaugh was able to confirm that Orebaugh was sending two couriers with the 14 pounds of methamphetamine to Idaho from the San Diego area. Orebaugh informed Detective Woodward that he would fly into Boise ahead of the couriers. Orebaugh informed Woodward that he would arrive to Boise on November 18, 2020 and the couriers would arrive on November 19, 2020. Orebaugh informed Detective Woodward that the couriers would be a male and female driving a truck with Idaho license plates.

f.) On November 18, 2020, TFO Garcia observed Orebaugh exit the Boise Airport and arrive to the Simple Suites in Boise Idaho.

g.) On November 19, 2020, surveillance was established at the Simple Suites by the Nampa Police Special Investigations Unit and Boise DEA Agents. Detective Woodward was informed by Orebaugh that he was going to meet the couriers in Nampa for lunch and then would meet with Detective Woodward to complete the methamphetamine transaction.

h.) The surveillance team followed Orebaugh from the Simple Suites to the Popeyes located in Nampa, Idaho. TFO Garcia observed Orebaugh meet with William Michael Huston (08-24-56) and Sonya K Schram (05-18-71) TFO Garcia observed as Schram, Huston, and Orebaugh entered a white Ford F-150 bearing Idaho license plate K615213 that was parked in the Popeyes parking lot.

i.) Nampa Police Officer Schouman initiated a traffic stop on the Ford for a turn signal violation in Nampa, Idaho. Nampa Police Officer Berrier arrived to the traffic stop and deployed his certified drug detection K-9 to conduct a free air sniff of the Ford. Officer Berrier obtained a positive alert on the Ford for the presence of an odor emitting from an illicit narcotic. A search of the Ford ensued and revealed a red backpack containing 14 wrapped packages. Officer Berrier opened one of the packages and observed a plastic Ziploc bag containing a white crystal substance.

2

j.) Nampa Police Officers detained and transported Orebaugh, Huston, and Schram to the Nampa Police Department. Orebaugh, Huston, and Schram were each placed in interview rooms.

k.) I advised Orebaugh that there was a large amount of methamphetamine located in the Ford. I then advised Orebaugh of his Miranda Rights to which he advised he understood. Orebaugh informed me that he wanted legal representation prior to speaking with me. I ended my interview of Orebaugh and began my interview of Schram.

l.) I advised Schram that there was a large amount of methamphetamine located in the Ford and then advised Schram of her Miranda Rights. Schram decided to speak to me and informed me that she traveled to Idaho with William Michael Huston from San Diego. Schram said they departed from San Diego last night at approximately 2000 hours. Schram said that Huston decided to travel with her and that she came to Idaho to visit family. Schram said Huston informed her that he was going to meet a friend at Popeyes. Schram then said that she did not meet Huston's friend because after she finished her lunch at Popeyes she walked out to the Ford. Schram said she received a text message from Huston instructing her to move the backpack in the back to the front. Schram said she asked Huston which one "yours" or the other one and that Huston told her the other one. Schram showed me the text messages and I confirmed that Huston did instruct her to move that backpack. Schram then informed me that she had traveled from San Diego to Idaho to purchase a gun. Schram said she had $2,100 to purchase a gun. Schram said she did not have a specific gun she was going to purchase. Schram said that Huston and she were also going to travel back to San Diego once she purchased her gun.

m.) I was then informed by Sgt. Huston that Orebaugh had changed his mind and wanted to speak to me. I walked into the interview room and informed Orebaugh that I would only be able to speak to him if he confirmed he did not want an attorney present for the conversation. Orebaugh informed me that he changed his mind and did want an attorney. I walked out of the interview at this time.

n.) Sgt. Huston interviewed Huston and advised him of his Miranda Rights, to which he said he understood his rights. Huston informed Sgt. Huston that he met Orebaugh for the first time at Popeyes and had asked Orebaugh if he needed a ride. Huston also informed Sgt. Huston that he did shove a methamphetamine pipe down his pants when he was stopped by the police. Sgt. Huston asked Huston if a search warrant was obtained for his phone would there be phone contact with Orebaugh. Huston informed Sgt. Huston that there would be contact in his phone with Orebaugh.

o.) Sgt. Huston again informed me that Orebaugh had changed his mind again

3

and wanted to speak to me. I walked into the interview room and informed Orebaugh that I was unable to speak to him because he had requested an attorney. Orebaugh informed me that he did not want an attorney present and wanted to speak to me. Orebaugh said he wanted to do the right thing. Orebaugh said he had been shot in Las Vegas approximately three years ago and because of his injuries he was unable to work. Orebaugh said because he was unable to work and had to take care of his father, he decided to middleman the methamphetamine deal. Orebaugh said he was going to be paid $15,000 for the methamphetamine deal. Orebaugh said he obtained the methamphetamine from San Diego but did not know how it arrived to Idaho. Orebaugh continued to say that he flew into Idaho yesterday and did not bring the methamphetamine with him on the plane. Orebaugh said he met Huston for the first time today.

p.) I informed Orebaugh and Schram that they were going to jail for trafficking methamphetamine. Orebaugh, Huston, and Schrum were booked into the Canyon County Jail for Trafficking Methamphetamine.

q.) Detective Woodward utilized a NIK Test U kit to test the white crystal substance and obtained a presumptive positive indication for methamphetamine. Detective Woodward obtained a total package weight of 456.1 grams for the suspected methamphetamine. The total package weight of the 14 packages is 6,643.7 grams.

r.) Through my training and experience I know that 6,643.7 grams of methamphetamine is not a user amount. The dosage unit for methamphetamine is .3 grams although heavy users could use more per dosage unit.

5. David J OREBAUGH a white male born on June 25th, 1974.

6.  Based upon the aforementioned information, I believe probable cause exists that David OREBAUGH, has committed the offense of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and submit this affidavit in support of a criminal complaint and warrant charging them with such a violation.

4

Joel Garcia, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this *via telephone* 20 day of November, 2020, by TFO Joel Garcia.

The Hon. Candy W. Dale
United States Magistrate Judge
District of Idaho